Harrell, J.
With respect, I dissent.
The Majority Opinion explains our declaratory judgment jurisprudence, noting that Md. Code, Courts & Judicial Proceedings Art., § 3-409(a) provides generally for the exercise of judicial discretion regarding whether to grant a declaratory judgment. The common law guides the exercise of that discretion. For example, “dismissal is rarely appropriate in a declaratory judgment action.” Christ v. Dep’t of Natural Resources, 335 Md. 427, 435, 644 A.2d 34, 37 (1994) (citations and quota *29 tion marks omitted). The existence of pending, parallel declaratory actions (at least within competing Maryland courts) “involving the same parties and ... identical issues,” Sprenger v. Pub. Serv. Comm’n of Maryland, 400 Md. 1, 26, 926 A.2d 238, 253 (2007) (citations and quotation marks omitted)... “warrants dismissal of one of the actions in the interests of “conserving judicial resources, avoiding conflicting judgments, and preventing evasion of the final judgment requirement for appeal.” Maj. Op. at 17-18, 165 A.3d at 506 (footnotes omitted). The Majority Opinion recognizes also that “very unusual and compelling circumstances” may overcome these underlying policy considerations and permit a trial judge to allow nonetheless a potentially redundant declaratory action to proceed. A. S. Abell Co. v. Sweeney, 274 Md. 715, 721, 337 A.2d 77, 81 (1975).
After determining that the actions here and in Minnesota share essentially the same parties and issues, the Majority Opinion rejects Hanover’s arguments why the particular circumstances of the present case are sufficiently unusual and compelling so as to render permissible the trial judge’s exercise of discretion not to dismiss the Maryland action. It is at this analytical crossroads that I take a different fork in the road than the Majority Opinion. How do I disagree with thee? Let me count the ways.[1]
The Majority Opinion rejects Hanover’s policy arguments, “including discouraging forum shopping by litigants, allowing Maryland courts to interpret a contract governed by Maryland law, and avoiding a ‘multiplicity of suits.’ ” Maj. Op. at 23, 165 A.3d at 510. Hybridizing the age-old arguments “two wrongs make a right” and “he started it,” the Majority Opinion minimizes the importance of discouraging forum-shopping, condoning Volkman’s exercise of the disfavored tactic because “it is also true that it was only after Hanover suffered an adverse ruling in the Shareholders’ Agreement Action in Minnesota that it filed the Declaratory Judgment Action in *30 Maryland about the same issue.” Maj, Op. at 23, 165 A.3d at 510.
The Majority Opinion goes on to rain on Hanover’s parade by rejecting the argument that Maryland courts are better equipped to construe the Shareholders’ Agreement, which is “subject to and governed by the laws of the State of Maryland,” because “Minnesota courts honor legitimate choice-of-law clauses in contracts, just as Maryland courts do.” Maj. Op. at 23, 165 A.3d at 510 (citations omitted). This factor makes reasonable certainly the circuit court’s discretionary option to defer to the Minnesota court in this case, but it does little to demonstrate the unreasonableness of what happened actually here—the trial judge’s decision to hear and decide the Maryland declaratory judgment action, notwithstanding the pen-dency of the Minnesota action. I am reticent to join in the Majority Opinion's reasoning that the Minnesota courts are at least as well-equipped to apply and interpret correctly Maryland law as are Maryland courts.[2]
Third, the Majority Opinion states that “allowing an additional action to proceed does nothing to trim a ‘multiplicity’ of actions, no matter where they are filed.” Maj. Op. at 23, 165 A.3d at 510 (emphasis in original). Perhaps in a narrow view this is true because allowing the Maryland action to proceed admits literally an additional judicial proceeding into the world. Viewing the case from a mile high, however, our choice should be whether to curtail, in this instance, forum-shopping, regardless of “who started it.” Allowing the Maryland proceeding to stand sends the message that parties such as Volkman may not avoid a Maryland forum—with a variety of connections to the underlying litigation—to seek a perceptually more favorable jurisdiction.
Next, the Majority Opinion rejects, as a potential unusual and compelling circumstance, “Ms. Volkman’s voluntary dismissal of the [Maryland] Employment Agreement Action with prejudice and the entry of a judgment confirming the [Mary *31 land] arbitration award concerning the amount of compensation to be paid her for the stock redemption.” Maj. Op. at 23, 165 A.3d at 510. I agree that this circumstance did not preclude, as a matter of law, Volkman from initiating suit in Minnesota, but it seems to be clear' that, because she chose to bring suit there, instead of seeking to vacate the Maryland arbitration award, she engaged blatantly in forum-shopping.
Finally, the Majority Opinion rejects Hanover’s argument that the trial judge in this action, having presided over the earlier employment agreement dispute, was in a position to be unusually and eompellingly more familiar than the Minnesota court with the basis of the underlying dispute. The Majority Opinion states that the earlier action focused primarily on Volkman’s tort claims and dealt minimally with the issues in this declaratory action, and that, in any event, the trial judge admitted to a limited recollection of the earlier proceeding. Maj. Op. at 24-25, 165 A.3d at 511-12. Although the judge’s memory, imperfect as it may have been on that given day, may dilute somewhat this factor as a standalone unusual and compelling circumstance, considered with the other factors (and that he could get up to speed likely faster than a Minnesota court), it lends an additional hue of judicial reasonableness painted by all of the factors.
The cases relied on in the Majority Opinion for the proposition that the Court “has not found [the unusual and compelling circumstances] exception applicable in the cases presented to it to date” were decided only in the context of like actions pending simultaneously in Maryland courts. Maj. Op. at 19, 165 A.3d at 507. Our opinion in A. S, Abell, for example, upheld the Circuit Court for Baltimore County’s dismissal of a declaratory action regarding the same issues and parties as involved in a case pending in the District Court of Maryland, Eighth District (Baltimore County). 274 Md. at 716, 337 A.2d at 78. In Waicker, we held that the Circuit Court for Baltimore City abused its discretion by ruling on a declaratory judgment action involving the same parties and issues as another case pending in the same court. Waicker v. Colbert, 347 Md. 108, 699 A.2d 426 (1997). Similarly, in Haynie, we *32 ruled that “there were no very unusual and compelling circumstances justifying the declaratory judgment” while another case, with the same issues and parties, was pending before the same court, the Circuit Court for Baltimore City. Haynie v. Gold Bond Bldg. Prod., 306 Md. 644, 652, 511 A.2d 40, 44 (1986).[3] Also, in 91st Street, we held that “the Circuit Court for Baltimore City abused its discretion when it enjoined the State and Ocean City from proceeding with the Worcester County action previously filed” in the Circuit Court for Worcester County. State v. 91st St. Joint Venture, 330 Md. 620, 632, 625 A.2d 953, 958 (1992). More recently, our opinion in Sprenger, a case involving dueling actions in the Circuit Courts for Baltimore City and Garrett County, stated that “it is inappropriate for a court to entertain a declaratory judgment action if there is pending, at the time of the commencement of the action for declaratory relief, another action or proceeding involving the same parties and in which the identical issues that are involved in the declaratory action may be adjudicated.” 400 Md. at 26, 926 A.2d at 253 (citations and quotation marks omitted). Thus, the efficiencies to be achieved in deciding these cases represented purely matters of internal case management of our State Judiciary. We were not concerned, as here, with whether it was reasonable for a Maryland court to proceed, even though a foreign action of similar ilk was pending.
The present case involves extraterritoriality, an element quite unusual undeniably in contrast with the Majority Opinion’s cited, and somewhat inapposite, authorities. Moreover, as conceded by the Majority Opinion, “at the time the Circuit Court heard this Declaratory Judgment Action, the Minnesota court had issued no judgment which our courts would be required to respect under the federal Full Faith and Credit Clause.” Maj. Op. at 27, 165 A.3d at 512. Extending the purview of this constitutional consideration via the principle of comity, the Majority Opinion states that, even in the absence *33 of a foreign judgment, courts may choose, as a “courtesy,” but not an “obligation,” to defer to the court in which the first-filed action exists. Our task, however, is to determine whether our circuit court abused its discretion, not whether it declined to extend a discretionary courtesy to a foreign court.
As pointed out by Judge Chasanow in his dissent in Waicker, “the question is whether the judge’s decision that the circumstances of this case warranted a declaratory judgment amounts to an abuse of discretion. Rather than reviewing this case under an abuse of discretion standard, however, the majority appears simply to apply a rule of law, without regard to the particular considerations that prompted the circuit court to entertain the declaratory judgment action.” 847 Md. at 119-20, 699 A.2d at 431 (Chasanow, J., dissenting). Here, the Majority Opinion considers the circumstances pressed by Hanover by reweighing them individually and in isolation as though we sit as an uber trial court. Our role is not to reweigh uncontroverted facts, but to determine whether the trial court acted within a range of reasonableness:
The analytical paradigm by which we assess whether a trial court’s actions constitute an abuse of discretion has been stated frequently. In Wilson v. John Crane, Inc., 385 Md. 185, 867 A.2d 1077 (2005), for example, we iterated
[tjhere is an abuse of discretion “where no reasonable person would take the view adopted by the [trial] court[ ]”... or when the court acts “without reference to any guiding principles.” An abuse of discretion may also be found where the ruling under consideration is “clearly against the logic and effect of facts and inferences before the court[ ]” ... or when the ruling is “violative of fact and logic.”
Questions within the discretion of the trial court are “much better decided by the trial judges than by appellate courts, and the decisions of such judges should be disturbed where it is apparent that some serious error or abuse of discretion or autocratic action has occurred.” In sum, to be reversed “[t]he decision under consideration has to be well removed from any center mark imagined *34 by the reviewing court and beyond the fringe of what that courts deems minimally acceptable.”
385 Md. at 198-99, 867 A.2d at 1084 (quoting In re Adoption/Guardianship No. 3598, 347 Md. 295, 312-13, 701 A.2d 110, 118-19 (1997)). An abuse of discretion, therefore, “should only be found in the extraordinary, exceptional, or most egregious case.” Wilson, 385 Md. at 199, 867 A.2d at 1084.
Aventis Pasteur, Inc. v. Skevofilax, 396 Md. 405, 418-19, 914 A.2d 113, 121 (2007).
Viewed as a whole, the circumstances of this action indicate to me that the circuit court judge’s decision not to dismiss the Maryland action was reasonable and not an abuse of discretion. Volkman chose an out-of-state forum, despite the dispute’s pre-existing connections to Maryland, thereby introducing extraterritoriality into the equation—an element unusual certainly in light of the relevant Maryland case law that deals only with dueling pending actions in Maryland. Here, Maryland fora decided at least two aspects of the larger dispute, i.e., the employment agreement spat and the stockholder agreement stock valuation arbitration award. Maryland courts are likely more familiar with Maryland law (the admitted governing law) than are Minnesota courts and, therefore, more likely to apply it correctly to the remaining dispute between the parties.
I would hold that, viewed in the aggregate, the factors examined in the Majority Opinion constitute “unusual and compelling circumstances” that are sufficient to reverse the Court of Special Appeals’s judgment determining that the circuit court judge abused his discretion by declining to dismiss or stay the declaratory judgment action. Therefore, I would direct the intermediate appellate court to affirm the judgment of the Circuit Court for Montgomery County.

. Apologies to Elizabeth Barrett Browning and her Sonnet 43, Lines 1-2.

. Perhaps my timidity in this regard stems from the retirement from the Supreme Court of Minnesota in August 2015 of the Hon. Alan C. Page (formerly one of the “Purple People Eaters" defensive line of the Minnesota Vikings), one of my athletic and legal heroes.

. The original action was filed "in what was then the Baltimore City Court (now part of the Circuit Court for Baltimore City).” Haynie v. Gold Bond Bldg. Prod., 306 Md. 644, 649, 511 A.2d 40, 42 (1986).